Argued and submitted December 14, 2017, affirmed February 26, 2020

Sally PHILLIPS,
*Plaintiff-Appellant,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,
*Defendant-Respondent.*

Yamhill County Circuit Court
15CV08801; A163831

461 P3d 1008

Plaintiff filed a claim with State Farm Fire and Casualty Company (State Farm) for damage to her insured rental property after a tenant's cats (approximately 100) defecated and urinated throughout the house. State Farm denied the claim under the policy, which excluded coverage for loss that is "directly or immediately" caused by domestic animals. Plaintiff brought suit for breach of contract. As relevant to this appeal, the trial court granted summary judgment in favor of State Farm. Plaintiff appeals, arguing that she did not allege a claim for damage "directly and immediately" caused by domestic animals, but rather alleged damage that was caused, through the passage of time, by the negligence of the tenant. State Farm first argues that plaintiff's appeal was not timely filed and, second, that the plain meaning of the policy language excluded coverage for the damage in question. *Held*: The trial court did not err. First, plaintiff timely filed this appeal. Second, damage caused by cats defecating and urinating on the insured property is direct and immediate. The fact that the damage caused by the cats may have been exacerbated by the passage of time or the failure of the tenant (or the insured landlord) to clean up the cat waste did not mean that the damages were not "directly and immediately" caused by the cats.

Affirmed.

Ronald W. Stone, Judge.

Douglas M. Bragg argued the cause for appellant. Also on the briefs were Fred Millard and Millard & Bragg.

Douglas F. Foley argued the cause for respondent. Also on the brief were Vernon Finley and Douglas Foley & Associates, PLLC.

Before Ortega, Presiding Judge, and Powers, Judge, and Mooney, Judge.*

MOONEY, J.

_____

* Mooney, J., *vice* Garrett, J. pro tempore.

Affirmed.

Powers, J., concurring in part, dissenting in part.

**MOONEY, J.**

This is an insurance coverage dispute concerning a "rental dwelling policy," a domestic animal exclusion, approximately 100 cats, and the permeating odor of cat waste. The parties to the insurance policy are State Farm Fire and Casualty Company (State Farm), insurer, and Sally Phillips, insured. The insured property owner is a landlord and the policy provides coverage for certain losses to her rental properties. The insured filed the underlying breach of contract claim against State Farm after State Farm denied coverage under the domestic animal exclusion.

The trial court granted partial summary judgment in favor of State Farm, concluding that coverage for property damage caused by the cats was excluded, as a matter of law, by the domestic animal exclusion. The parties litigated the remaining issues, which were resolved in State Farm's favor on cross-motions for summary judgment, and plaintiff thereafter filed this appeal raising several assignments of error. We write to address the timeliness of plaintiff's appeal of the partial summary judgment ruling and, finding it to be timely, to discuss the merits of that ruling. Ultimately, we affirm. We reject without further discussion the first, second, third, and sixth assignments of error.

The operative complaint filed by the insured against State Farm alleged a single claim for relief seeking recovery for two types of damage. The parties generally referred to the two types of damage as "cat damages" and "non-cat damages." State Farm moved the trial court for an order granting partial summary judgment, arguing that it was entitled as a matter of law "to dismiss Plaintiffs' claim for breach of contract for the cat related damage to the rental house, and for an order declaring that State Farm is not obligated to provide coverage for the claims made by the Plaintiff * * * for cat related damage due to the policy exclusion for domestic animals." The court granted the motion "regarding all damages related to, or caused by, domestic animals." The following "Limited Judgment Granting Defendant's Motion for Partial Summary Judgment re Domestic Animal Damage" was entered on March 24, 2016:

> "Based on the Order Granting State Farm Fire and Casualty Company's Motion for Partial Summary Judgment as to the domestic animal damage, a Limited Judgment is hereby
>
> "ADJUDGED that Defendant State Farm Fire and Casualty Company has a Limited Judgment against Plaintiff on the basis that the policy issued to Plaintiff provides no coverage [for] property damage caused by, or related to, domestic animal damage."

(Capitalization in original.)

As an initial matter, State Farm contends that plaintiff's appeal was untimely. As explained below, we disagree and conclude that the appeal is not time barred.

A limited judgment entered in compliance with ORCP 67 B is an appealable judgment, and the notice of appeal must be filed within 30 days of its entry. ORS 18.005(13); ORS 19.205(1); ORS 19.255(1). ORCP 67 B provides that,

> "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may render a limited judgment as to one or more but fewer than all of the claims or parties. A judge may render a limited judgment under this section only if the judge determines that there is no just reason for delay."

A limited judgment may be used to resolve fewer than all pending claims within a lawsuit, but only where (1) the case is entirely concluded as to a particular party or where (2) an entire claim between the parties is resolved. "[W]here an action does not involve multiple parties, in order to enter a limited judgment under ORCP 67 B, the action must involve more than one claim for relief." *Lindsay v. The Nicewonger Co., Inc.*, 203 Or App 750, 755, 126 P3d 730 (2006). *Lindsay* was a wrongful death case in which the plaintiff sought to appeal the trial court's decision to grant summary judgment dismissing the plaintiff's request for noneconomic damages. We held that a request for noneconomic damages was not a separate claim for relief for purposes of determining whether the ruling captioned as a limited judgment qualified as a "limited judgment" under ORCP 67 B. *Id.* at 756.

We thus concluded that the limited judgment concerning noneconomic damages was not appealable. *Id.* at 757.

This case is like *Lindsay*. The trial court's initial decision on summary judgment resolved the request for cat damages but it did not dismiss the entire claim for relief. *See also Steele v. Mayoral*, 231 Or App 603, 611, 220 P3d 761 (2009) ("[A] portion of a claim may not be disposed of by a limited judgment; rather, a limited judgment must dispose of a whole claim."); *Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 162, 218 P3d 113 (2009) (a limited judgment must "conclusively resolve some but not all of the claims in a particular action").

Because this case involved two parties and a single claim for relief, the limited judgment was not a "limited judgment" under ORS 18.005(13)[1] and, thus, did not trigger the running of the 30-day time limit under ORS 19.255(1). Plaintiff timely filed her notice of appeal when she did so within 30 days of entry of the general judgment of dismissal, which followed resolution of the remaining issues in the case and incorporated the coverage resolution reflected in the earlier limited judgment.

Moving to the merits of the fourth and fifth assignments of error, we review the trial court's conclusion on summary judgment that the cat damages were not covered under the policy. The parties' arguments on appeal concern the court's interpretation of the insurance policy, which is a question of law. *Ortiz v. State Farm Fire and Casualty Co.*, 244 Or App 355, 357, 260 P3d 678 (2011). We review the trial

---

[1] A limited judgment is:

"(a) A judgment entered under ORCP 67 B or 67 G;

"(b) A judgment entered before the conclusion of an action in a circuit court for the partition of real property, defining the rights of the parties to the action and directing sale or partition;

"(c) An interlocutory judgment foreclosing an interest in real property; and

"(d) A judgment rendered before entry of a general judgment in an action that disposes of at least one but fewer than all requests for relief in the action and that is rendered pursuant to a legal authority that specifically authorizes that disposition by limited judgment."

ORS 18.005(13).

court's grant of summary judgment to determine whether there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based on the record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* "In determining whether a genuine factual dispute exists, we review the record in the light most favorable to the nonmoving party," and draw all reasonable inferences in the nonmoving party's favor. *Whalen v. American Medical Response Northwest*, 256 Or App 278, 280, 300 P3d 247 (2013). Because the material facts relevant to the question of coverage for cat damage are not in dispute, we review the trial court's determination for legal error.

In interpreting an insurance policy, the goal is to determine the intentions of the parties. *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 649, 147 P3d 329 (2006). The parties' intentions are determined from the terms of the policy. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999). We interpret those terms "according to what we perceive to be the understanding of the ordinary purchaser of insurance." *Coelsch v. State Farm Fire and Casualty Co.*, 298 Or App 207, 214, 445 P3d 899 (2019).

Section I of the policy, entitled "Losses Insured," states that "[w]e insure for accidental direct physical loss to the property described in Coverage A and B, except as provided in Section I - Losses Not Insured." The "Losses Not Insured" section states, in part:

> "1.   We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:
>
> "* * * * *
>
> "n.   birds, vermin, rodents, insects or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

"However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section."

The issue in this case centers on the meaning of the phrase "directly and immediately." The policy does not define the terms "directly" or "immediately." In the absence of such definitions, we resort to aids of interpretation to discern the parties' intent. We begin by determining whether the terms have a "plain meaning" by reference to the usual source of ordinary meaning, the dictionary. *Smith v. State Farm Insurance*, 144 Or App 442, 447, 927 P2d 111 (1996). If the term has a plain meaning because it is susceptible to only one plausible interpretation, we apply that meaning and conclude the analysis. *Groshong*, 329 Or at 308; *Ortiz*, 244 Or App at 360; *Coelsch*, 298 Or App at 211.

The term "directly" is defined primarily as "1a**:** without any intervening space or time **:** next in order[;] *** b**:** in a straight line **:** without deviation of course." *Webster's Third New Int'l Dictionary* 641 (unabridged ed 2002). "Immediately" is defined primarily as "1**:** without intermediary **:** in direct connection or relation **:** closely." *Id*. at 1129. The terms are closely related and, when considered together as a phrase in the context of the insurance policy as a whole—and the policy exclusion in particular—we conclude that an ordinary purchaser of a "rental dwelling policy" would understand it to mean exactly what it says: property loss directly and immediately caused by domestic animals is not covered. That is to say, damage that can be directly linked to domestic animals by timing and physical connection is excluded.

It is undisputed that cats are domestic animals. And there is no dispute that cat waste (urine and feces) was the source of loss to the insured property (described as a permeating odor throughout the rental property) and that it was plaintiff's tenant's cats that caused that waste to be present. Plaintiff instead argues that she did not allege a claim for damage "directly and immediately" caused by domestic animals, but rather alleged damage that was caused, through the passage of time, by the negligence of the tenant. According to plaintiff, it is the tenant's actions and

inactions that resulted in the permeating odor throughout the home.

State Farm responds that the plain meaning of the policy language excludes coverage for the cat-damage in question. We agree with State Farm. Damage caused by cats defecating and urinating on the insured property is direct and immediate. The fact that the damage caused by the cats may have been exacerbated by the passage of time or the failure of tenants (or the insured landlord) to clean up the cat waste does not mean that the damage was not "directly and immediately" caused by the cats, and it certainly does not render the policy language ambiguous. We conclude that the elimination of feces and urine by domestic animals onto the insured's rental property is damage that is excluded from coverage under the policy in this case. The passage of time and the failure to take reasonable steps to intervene when damage occurs may well make matters worse, but the cats caused the damage. It is therefore excluded under the policy.[2]

This case is remarkably similar to *Bjugan v. State Farm Fire and Casualty Company*, 969 F Supp 2d 1283 (D Or 2013), *aff'd*, 644 F App'x 789 (9th Cir 2016).[3] *Bjugan* involved 95 cats in a rental dwelling, extensive animal feces and urine, and a domestic animal exclusion identical to the one in the case before us. The *Bjugan* court found that the "domestic animal exclusion" was not ambiguous, and it rejected an argument that the cat damage in that case was caused by vandalism. *Id.* at 1293. It explained that the plain meaning of the policy excluded all damage caused by the cats, because the "direct and immediate" cause of the physical loss was the cat damage. *Id.* at 1292. That court

---

[2] *See Montee v. State Farm Fire and Casualty Co.*, 99 Or App 401, 405, 782 P2d 435 (1989), *rev den*, 309 Or 521 (1990) (noting that, just because the loss is caused by an external force, and is severe, is not a reason to disregard the policy exclusion excluding a certain category of damage; the court explained that the extensiveness and seriousness of the settling and cracking of the foundation of the house did not mean that the overall loss was something other than settling and cracking).

[3] In affirming the district court, the Ninth Circuit concluded in its letter opinion that, when read in the context of the policy as a whole, the domestic-animals exclusion unambiguously excludes coverage for all losses directly and immediately caused by domestic animals.

explained its view that the use of the phrase "directly and immediately" removed any ambiguity in the term "caused." *Id.* In determining whether the damage in that case was "the closest cause in time," that court explained its conclusion as follows:

> "Taking the Bjugans' argument literally, was it the renter's decision to have cat number five or ten or fifteen or thirty-five that reached the point of being vandalism? What was the cat damage before that point in time? The plain meaning of the State Farm policy is that it was the actions of the cats that was the 'direct and immediate' cause of the physical loss here, whether it was the first cat, the thirty-ninth, or the ninety-fifth cat."

*Id.* at 1291-92. We likewise conclude that the domestic animal exclusion is plain and unambiguous on its face, and we further reject plaintiff's argument that the cat damage is otherwise covered as ensuing damage. Ensuing damage does not include losses "Not Insured by this Section." As discussed, the cat damage in this case is excluded from coverage and, thus, not insured.

The action of the cats was, as a matter of law, the direct and immediate cause of the physical loss. The trial court did not err in granting State Farm's motion for partial summary judgment.

Affirmed.

**POWERS, J.,** concurring in part, dissenting in part.

"[A]n insurance policy should be construed according to its character and its beneficent purposes, and in the sense that the insured had reason to suppose that it was understood." *Shadbolt v. Farmers Insurance Exchange*, 275 Or 407, 411, 551 P2d 478 (1976) (internal quotation marks and footnotes omitted). Because the majority opinion contravenes that precept, I respectfully dissent from part of the majority's opinion. In my view, the interpretation adopted by the majority opinion effectively eliminates the "directly and immediately" language from the domestic animal exclusion and ignores evidence in the summary judgment record that

creates a factual dispute regarding the loss caused by excessive and pervasive odor.

My disagreement with the majority opinion is narrow. I agree that the appeal is not time barred and also agree that plaintiff's remaining assignments of error, save for the issue discussed below, should be rejected without written discussion. I part ways, however, with the majority opinion when it discusses the domestic animal policy exclusion. In my view, the trial court erred in concluding that there was no genuine issue of material fact as to whether the losses were directly and immediately caused by domestic animals. Accordingly, I concur in part and dissent in part.

The complaint alleged a number of ways in which plaintiff's tenant caused damage to the rental property:

"Between April 10, 2013 and March 17, 2014, Plaintiff's tenant caused damage to Plaintiff's Property in one or more of the following respects:

"a.   Failing to properly care for her approximately 100 cats; or

"b.   Failing to properly clean up after her approximately 100 cats; or

"c.   Allowing cat urine and feces to remain on the Property for a long enough period of time that it absorbed into the structure and rendered the Property uninhabitable; or

"d.   Intentionally or recklessly destroying the Property by bringing 100 cats onto the premises; or

"e.   Allowing feral, non-domesticated, cats into the Property, which they then destroyed[.]"

Plaintiff argues that she did not allege a claim for damage "directly and immediately" caused by domestic animals; rather, she alleged damage that was caused, through the passage of time, by the tenant. According to plaintiff, it is the tenant's actions—or rather, inactions—that resulted in the permeating odor throughout the home. Alternatively, plaintiff argues that the loss is covered under the "ensuing loss" provision of the policy.

State Farm Fire and Casualty Company responds that the plain meaning of the policy excluded all damage caused by the cats and that odor from cat waste is not distinct from damage caused by cats and therefore cannot be labeled as a separate loss. In adopting State Farm's interpretation, the majority opinion essentially eliminates the requirement that the loss must be "directly and immediately"— that is, without any intervening time or intermediary— caused by a domestic animal and excludes all domestic animal damage whether it was direct and immediate or otherwise. *See Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 513, 156 P3d 105, *rev den*, 343 Or 363 (2007) (noting that a court's obligation is "to give effect to the language the parties chose, not the language they might have chosen" (internal citation and quotation marks omitted)). I would conclude that the timing of the cause of the damage, in addition to whether there was any intermediary, is relevant for purposes of determining whether the exclusion applies. I would further conclude that the trial court erred in granting State Farm partial summary judgment because disputed factual issues exist as to whether the damage was caused "directly and immediately" or through the passage of time and the inaction of an intermediary.

Applying a plain-meaning interpretation of the insurance contract does not—as State Farm urges and as the majority opinion adopts—necessarily result in the same outcome as *Bjugan v. State Farm Fire and Casualty Company*, 969 F Supp 2d 1283 (D Or 2013), *aff'd*, 644 F App'x 789 (9th Cir 2016). In that case, the court interpreted identical policy language for similar physical damage to a rental home where the tenant had 95 cats and two dogs. *Id.* at 1284. The plaintiffs argued that the damage to the home constituted vandalism and that the loss to the home was "directly and immediately" caused by the tenant's vandalism, and not the cats. *Id.* at 1288. The plaintiffs articulated the vandalism as the tenant taking "in so many cats she could not possibly attend to every one on a frequent enough basis to be sure no damage was done to the dwelling." *Id.* The court declined to decide whether the loss constituted vandalism, and instead, determined that, even if it could be categorized as vandalism, it was not the direct and immediate cause of

the loss. *Id.* at 1292. The court distinguished "directly and immediately," from proximate cause, stating that the definition of proximate cause "looks back to the cause that started a chain of events, whereas a 'direct and immediate' cause looks back only to the closest cause in time." *Id.* at 1291. Thus, because the tenant's vandalism—owning too many cats to care for—"preceded the cats causing the damage," the cats, and not the vandalism, were the direct and immediate cause of the loss. *Id.* at 1290. Therefore, that court determined that the loss fell under the "domestic animal" exclusion and was not covered under the policy.

Plaintiff in this case, in contrast to the plaintiffs in *Bjugan*, is seeking to recover the loss specifically related to the odor that resulted from the failure to timely clean up cat urine and excrement. Plaintiff contends that such pervasive odor was not "immediately and directly" caused by cats, but rather "w[as] *subsequently* caused by tenant negligence, over [the] passage of time." (Emphasis in original.)

Plaintiff provides support for her description of the loss and cause by citing State Farm's Claim Notes after an inspection of the property and outlining how uncleaned urine and feces affect surfaces over time. State Farm's Claim Notes provide, in part, "[f]ound home in such a condition that a hazmat suit and [a] very good respirator for ammonia is needed for entry[;] *** [a]ll flooring is saturated w/cat urine and feces, the smell is overpowering, even thru borrowed 3M respirator." Plaintiff argues that such a hazardous odor is not "directly and immediately" caused when cats urinate. Rather, plaintiff asserts that it was the failure to clean up wet cat urine and feces within a reasonable amount of time that resulted in the pervasive odor. Plaintiff articulated that an expert would explain that

> "wet cat urine and wet feces, if not cleaned up in a reasonable time, soaks into hard surfaces and dries or evaporates into vapor that travels through the house and can permeate both hard surfaces, such as floors, walls and ceilings, and even structural members, and soft surfaces such as carpets, carpet pads, and draperies, etc., with a pervasive odor that persists in the house and attaches to the property causing direct physical loss to the property."

State Farm counters that the odor cannot be classified as a separate type of loss from the wet urine and feces; "[t]he odor is simply the result of cat excrement." That argument, however, fails to adhere to our well-established standard of review, *i.e.*, State Farm's argument depends on a view of the facts in the light most favorable to it and not to plaintiff. *See Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001) (explaining that a court reviews the grant of summary judgment by viewing "the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party").

As explained above, the policy phrase "directly and immediately" excludes losses caused by the cats that occur without intervening time or an intermediary. Plaintiff is not seeking coverage for the loss of removing the cat feces, odor, or subsequent stains; rather, plaintiff seeks coverage for the pervasive odor that persisted after urine and feces soaked into surfaces of the home. Thus, given the parties' arguments and contrary to the conclusion in the majority opinion, there is a genuine issue of material fact as to the damage caused by the odor.

The parties dispute whether the loss from such a pervasive odor occurred instantly as a result of the cats or because of intervening time or an intermediary, *viz.*, the tenant's action or inaction. Further, given the factual dispute regarding the loss caused by the odor, we should decline to assess whether the claimed loss is alternatively covered under the "ensuing loss" provision of the policy.[1] Accordingly,

---

[1] I also respectfully disagree with the discussion of the "ensuing loss" provision articulated in the majority opinion. 302 Or App at 508. It is not clear from that cursory discussion whether the majority opinion follows the "efficient proximate cause" test articulated in *Naumes, Inc. v. Landmark Insurance Company*, 119 Or App 79, 82, 849 P2d 554 (1993), which focuses on "the active and efficient cause that sets in motion a train of events which bring about a result without the intervention of any force, starting and working actively and efficiently from a new and independent source," or if the majority opinion interprets the "ensuing loss" provision to mean something else. There is, to be sure, a dearth of Oregon cases discussing "ensuing loss" in the context of insurance coverage cases. If the majority opinion is following *Naumes*, it is arguable that it should conclude that, because plaintiff alleged damage from tenant's inaction that potentially permeated both hard surfaces and "even structural members" of the house, summary judgment is inappropriate under the circumstances of this case. *See Naumes*, 119 Or App at 82-83 ("Generally, if the facts are disputed, or different inferences may

because I would conclude that the trial court erred in granting partial summary judgment to State Farm, I respectfully concur in part and dissent in part.

---

be drawn from undisputed facts, the question of the 'efficient proximate cause' of a loss is for the jury." (Citation omitted.)). On the other hand, the majority opinion could have concluded that the accumulation of cat urine and feces, rather than the tenant's action or inaction, "set[] in motion a train of events" such that the "ensuing loss" clause does nothing to aid plaintiff's position. Because I cannot tell from the short discussion, I cannot join in that discussion. In any event, because I would conclude that there is a factual dispute preventing the grant of summary judgment on whether the loss was "directly and immediately" caused by the cats or by the tenant's action or inaction, I do not delve further into the majority opinion's treatment of the "ensuing loss" provision.